## BRYANT *v.* THE STATE.

CRIMINAL LAW. *Burden of proof.* The court charged the jury that proof of the *corpus delicti*, the venue, and that the deceased was slain by the prisoner, overthrew the presumption of innocence, and cast the burden of proof upon the defendant to show that he was not guilty of the crime with which he was charged, viz: murder in the first degree. This charge is erroneous, as it is calculated to mislead the jury, but the jury should have been instructed to look at all the circumstances connected with the killing from which to infer the degree of guilt.

Cases cited: Riley *v.* The State, 9 Hum., 661; Witt *v.* The State, 1 Cold., 5; Coffer *v.* The State, 3 Yerg., 283; Nelson *v.* The State, 10 Hum., 518.

### FROM GILES.

Appeal from the Criminal Court.

No brief for complainant.

ATTORNEY-GENERAL HEISKELL for the State.

McFARLAND, J., delivered the opinion of the court.

The prisoner was convicted in the Criminal Court of Giles county of murder in the first degree, and his motions for a new trial and in arrest of judgment were overruled, and the judgment of death pronounced, from which he appeals to this court.

The Judge of the Criminal Court, as his first proposition to the jury, used the following: "The prisoner stands charged with the murder of Alexander G. Steele.

You start out in this investigation with the presumption that the prisoner is innocent of the crime with which he stands charged, and the presumption stands in favor of the prisoner until the contrary is proved. It devolves upon the State to establish by proof, first, the *corpus delicti*, the body of the offense, that Alex. G. Steele has been slain; second, the venue that he was killed in the county of Giles; third, that he was killed by the prisoner at the bar. If these three things are established by competent proof beyond a reasonable doubt, then the presumption of innocence is overturned, and the burden of proof devolves upon the defendant to show that he is not guilty of the crime with which he stands charged."

Is this proposition correct? Perhaps, as a matter of fact, few cases ever arise where the proof of the fact of the killing by the prisoner comes before the jury disconnected from the circumstances attending it, and from which the degree of guilt is to be determined. But suppose a case to arise where the evidence for the prosecution establishes without doubt the three things stated above, the *corpus delicti*, the venue, and that the deceased was slain by the prisoner, without the proof of any of the circumstances attending the homicide, or the means by which it was perpetrated, it can readily be conceived that cases of this sort might arise. Suppose the case to rest alone upon this evidence, would the prisoner be guilty of murder in the first degree.

In the case of *Riley* v. *The State*, Judge Green, in a remarkably clear opinion, uses this language:

"The sum of the statute is this: In cases of murder by ordinary means the circumstances of the transaction must show that it was done willfuly, deliberately, maliciously, and premeditatedly, or it is not murder in the first degree; but if murder be perpetrated by poison, or lying in wait, it shall be murder in the first degree, the fact of lying in wait shall of itself be evidence of a willful, deliberate, malicious, and premeditated purpose. If it be proved that the killing was of such a character that, under ordinary circumstances, it would have been murder at common law, and the fact of lying in wait exist, that fact will make it a case of murder in the first degree under the statute. When lying in wait is established, all proof as to 'intention' or willfulness is irrelevant if the stroke be given under circumstances that would make murder at common law. If a party strike with a deadly weapon without provocation, intending to inflict the stroke as a matter of law, which he cannot dispute, he shall be held to intend the consequences, and if death ensue it is murder, and in such a case, if lying in wait exist, it is murder in the first degree."

This opinion, as will be observed, was given in a case where the question of lying in wait was involved. In the present case, this question was not discussed in the judge's charge, and to this extent the cases are different; but the reasoning is applicable and convincing, and it settles the question above propounded.

1st. He says, in cases of murder by ordinary

means, the circumstances of the transaction must show, that it was done willfuly, deliberately, maliciously, and premeditatedly, or it is not murder in the first degree.

2d. He shows that it is not every killing, when lying in wait is proven, that is murder in the first degree. Even then the killing must be shown to have been under such circumstances as would have made it murder at common law. Then only does the additional fact of lying in wait make it murder in the first degree.

3d. He shows that when the fact of killing is proven with a deadly weapon, even then it is only murder at common law, or in the second degree.

So it cannot be that proof of the *corpus delicti,* the venue, and that the deceased was slain by the prisoner without doubt, makes a case of murder in the first degree.

Is this the meaning of the charge? We think it must have been so understood by the jury. He says that upon the proof of these three things, beyond a reasonable doubt, the presumption of the prisoner's innocence is overturned. This may be conceded, but he does not stop at this, but tells the jury that the burden of proof devolves upon the defendant to show that he is not guilty of the crime with which he stands charged. The crime with which he stands charged the jury must have understood to be crime of murder in the first degree, and the logical inference is, that upon proof of the three things stated, the jury would convict of murder in the first degree, unless the defendant's proof entitled him to an acquittal.

It is true that the State did not stop with the introduction of the proof, but went fully into the entire circumstances of the case; but this does not cure the error of the court in improperly charging the burden of proof upon the defendant. But it is argued by the Attorney General, that if this proposition of the Criminal Judge, taken alone, be erroneous, yet the charge, as a whole, corrects the error.

After the proposition above given, his honor proceeded to define the different degrees of murder and manslaughter, and said that the prisoner's guilt must appear beyond a reasonable doubt before he could be convicted of any of the grades of offense. He does not, in this charge, correct his former proposition as to the onus of proof, except in the following language: "The killing being proved with or without a deadly weapon, the law presumes the existence of malice, not such malice, however, as would constitute murder in the first degree, under the statute, but murder at common law, or murder in the second degree, and unless this presumption is removed by the proof, he is guilty of this offense."

This proposition does so far change the first as to make the proof of the three facts first stated conclusive evidence of the defendant's guilt of murder in the second degree, instead of murder in the first degree, unless disproved by the defendant.

The question now arises, is this proposition correct? It will be borne in mind that this charge is given in a case where the evidence upon behalf of the State as well as the defendant had fully described the cir-

cumstances of the killing, and the instrument with which it was done, and when the fact of the killing could not, upon the evidence, be controverted. In such a case is the above proposition correct? This proposition seems to be sustained by a *dicta* in the case of *Witt* v. *The State*, 6 Cold. The judgment in the case was arrested because the indictment was fatally defective, and this proposition was, therefore, not involved, and, besides, the statement of the proposition was very general.

It is said the case of *Coffer* v. *The State*, 3 Yer., sustains the proposition. We do not so understand it. Judge Catron's opinion is strongly against it. He says the defendant is charged with the fact of killing, and the intent with which it was done, and the intent must concur to constitute the crime. Since the act of Henry VIII., he uses this language: "The jury were, in effect, told, if they found the killing, which no one denied, the malice was presumed, and that they should find the defendant guilty. Suppose they had returned a special verdict that they found the defendant slew the deceased as laid in the indictment, but of the fact he slew him with malice they were not convinced, could the court lawfully have pronounced judgment of death upon the finding? I think clearly not."

In the same case Judge Green said: "Presumption only arises where there is an absence of proof. In homicides, where the fact of killing, with its attendant circumstances, is proved clearly and satisfactorily, so that the proof either shows express malice, or that

Bryant *v.* The State.

there was no malice at all, there is nothing to be presumed, either the one way or the other; but in cases where the killing may be proved, and no accompanying circumstances appear in the evidence, the law presumes that the killing was done maliciously. So, where the killing is proved, and the circumstances attending it are shown, though no express malice may appear from the proof, it may be presumed from attending facts, as, if a deadly weapon were used, the law presumes malice; so if there be circumstances of cruelty and barbarity," etc.

The opinion of Judge Peck in the case does not bear so directly upon the question, but Judges Catron and Green clearly concur in the opinion that in a case where the killing is proved, with the attending circumstances, the law does not presume malice from the killing alone; the law presumes nothing, either the one way or the other, but the jury are left to determine the question of malice from the circumstances. For instance, if in such case, says Judge Green, a a deadly weapon be used, the law presumes malice. There seems to be an inconsistency in saying that in such case, if a deadly weapon be used, the law presumes malice, and at the same time say the law presumes malice from the killing alone, whether with or without a deadly weapon. So it is manifest that the doctrine that the law presumes malice from the proof of the killing alone does apply to those cases where the fact of killing is proved without any of the attending circumstances. That the rule does apply in such a case was the opinion of Judge Green, in which

be is sustained by other authorities, though it is not clear that Judge Catron concurred in applying the rule even in that case.

In other cases, however, the doctrine that the law presumes malice from the killing alone, and throws upon the defendant the burden of disproving the malice, has been announced without regard to any distinction between these cases where the circumstances are in proof and these cases where the fact of killing alone has been proved without the attending circumstances: See *Nelson* v. *The State,* 10 Hum.

But we apprehend in all cases it is proper for the jury to consider whether or not the presumption of malice is rebutted by the circumstances proven by the State as well as the defendant, or whether, from all the circumstances, the presumption arises at all or not, and the character of weapon used is certainly important. In a case like the present, where not only the fact of killing was proved, but all the attending circumstances, and the weapon used exhibited to the jury, we think it was error to tell the jury, "that the killing being proved, with or without a deadly weapon, the law presumes the existence of malice such as to constitute murder in the second degree, and unless this presumption is removed by proof, the prisoner was guilty of that offense."

We think this was, in effect, telling the jury that it was immaterial whether the weapon used be a deadly one or not.

The language of Judge Green, in *Riley* v. *The State,* 9 Hum., 661, before referred to, is clear and convinc-

ing. He says: "If a party strike with a deadly weapon, without provocation, intending to inflict the stroke, he shall be held to intend the consequences, and if death ensue it is murder." This rests upon a sound principle. The natural and probable consequences of such a stroke with a deadly weapon was to produce death, and if death, in fact, ensue, it is fair to hold that the party intended to take life; but if the blow was stricken with a weapon not calculated to produce death, though death, in fact, ensue, the same deadly intent cannot be inferred from the fact of killing alone; but in the latter case the malice and deadly intent may be established by other circumstances.

We are of opinion that the charge is erroneous, and the prisoner is entitled to a new trial.

Reverse the judgment.